FILED
RICHARD W. NAGEL
CLERK OF COURT

20 JUN -4 AM 11: 40

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

EH

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KARL FUGATE,
    - PLAINTIFF

VS.

RON ERDOS, ET. AL.
    - DEFENDANTS

CASE NO. 1:19-CV-00030

JUDGE MATTHEW W. McFARLAND
M.J. STEPHANIE K. BOWMAN

## Motion For Summary Judgment under Rule 56 of the Federal Rules of Civil Pr.

Plaintiff Karl Fugate now moves for Summary Judgment - in whole or in part - as there exist no real factual disputes which would require a trial in this case. Attached is the Plaintiff's sworn affidavit that the evidence upon which he relies in this Motion was provided him by the Defendants' attorney as part of Discovery - some of which is attached to the present Motion, the rest being in the possession of Plaintiff's case-manager, as prison officials won't allow him to retain possession of it himself. Such as video footage.

And while on the subject of Discovery, the Plaintiff recognizes that per Rule 56(B) a Motion for Summary Judgment should've been filed within 30 days of Discovery having been completed - but as can be seen in the atta-

cited letter sent him by the defendants attorney (Exhibit A), the defendants left open-ended their commitment to providing discovery until ODRC staff can resume 'normal working conditions'. Since there's no set date when this will happen, Plaintiff relies upon what he has now, which he believes will suffice for him to prevail in this motion for summary judgment.

There was two parts to the Plaintiff's claim, the first part being the injury suffered when the Plaintiff's took him to the infirmary (where there are no cameras) to beat him, the second being the injury he suffered when the Warden ordered that he be 'stripped out' at the start of every shift for approx. 30 days straight: a form of corporal punishment that supplemented the premeditated beating that he took on the day of his assault on a staff member.

Plaintiff addresses the latter part of his claim first, presenting his argument as to why summary judgment should be granted as to that portion of his claim.

## Claim Against Ron Erdos

Upon returning from the hospital the Plaintiff was placed in a special segregation cell known as the 'Double Doors' - so-titled for obvious reasons, because these cells have an initial door that leads to a small 'foyer' and then another locked door, behind which resides the inmate. Security is such in the 'Double Doors' that absolutely nothing impermissible gets into or out of a cell such as this, these cells also being under constant video surveillance.

This means that there are no legitimate security concerns that would

warrent the type of constant 'stripping out' which Defendant Erdos ordered be done to Plaintiff Fugate: See Exhibit B. Be it noted that an order to 'shake-down' an inmate involves more than just a searching of his cell, rather the shaking down of an inmate — as was specifically ordered by Defendant Erdos — involves the search of his cell and his person.

The 4th Amendment forbids the government from conducting 'unreasonable searches and seizures'. Now true, in Hudson v. Palmer, 468 U.S. 517 (1984) the Supreme Court held that prisoners don't have a reasonable expectation of privacy in their cells, so prison officials can search them as a routine matter without any particular justification — but this doesn't mean that ALL cell-searches are OK. If a prison official searches an inmates cell just to harass him or for some other reason that's not justified by a penological need, this may be a 4th Amendment violation.

For example, the 8th Circuit in Scher v. Engelke, 943 F.2d 921, 923-24 (1991) held that a prison guard searching an inmates cell 10x in 19 days was such a violation. In the present case, the systematic searching of the plaintiff's cell was even more egregious. Defendant Erdos ordered Plaintiff Fugate to be shookdown every shift for around 30 days straight: there are 3 shifts in a 24 hour period, so the Plaintiff was shookdown 3x a day for 30 days straight. NINETY times in a 30-day period.

And this is just the cell searches, which is all that was at issue in Scher v. Engelke. There is more constitutional protection against body searches, than mere cell searches. While prisoners have no expectation of privacy in their cells, they retain a "limited expectation of privacy" in their bodies.

In analyzing body cavity searches, strip searches, or any invasions of

of bodily privacy, a court must balance the need for the search against the invasion of privacy that the search involves. Strip searches are generally allowed, but the searches must be related to legitimate penological interests and cannot be excessive or used to harass, intimidate, or punish.

In Jean-Laurent v. Wilkenson, 540 F. Supp. 2D 501 (S.D.N.Y. 2008), for example, it was held that a second strip search was unconstitutional because the inmate was under constant supervision of guards since the first search occurred. Constant supervision being what plaintiff Fugate was under, there behind those 'double doors' wherein he was denied any opportunity to acquire any form of contraband whatsoever — a fact which the prison officials who stripped him out 3x a day were certainly aware of. Which therefore means that there was no legitimate penological interests being served by this program of systematic stripping, the only thing being served here was the defendants urge to harass, intimidate and punish.

Unless the defendants intend to argue that Exhibit B is a forgery, there are no facts in dispute here, which means that the court can proceed to apply the law to these facts.

## Claim against the Other Defendants

After the plaintiff assaulted the staff member the defendants took him into custody, escorted him to the infirmary where they knew no cameras to be, took him into a back room and proceeded to beat him in a most brutal fashion. Video footage provided by the defendants in discovery show that there was no injuries to the plaintiff's face as he was being led down the hallways to the

5 of 6

Infirmary - where, by the way, it is standard procedure to take inmates after involvement in any sort of physical altercation.

As medical records and photos indicate, when Plaintiff was taken to the outside hospital at doctors orders, he had a deep gash on his head: the sort that bleeds profusely. A sort of wound that would've been plainly visible on the videos which show the Plaintiff's face as he is on the way to the infirmary - had the wound been there at that time. It wasn't. So when was that wound suffered? It could've only been once he was in the infirmary, in chains and in the custody of the defendants. And since the defendants don't allege that the Plaintiff gave them cause to use force on him once in the infirmary, there is therefore no legal justification for their harming him so.

The facts speak clearly to the truth of what happened, and so as in the 1st part of this case, the court can proceed to apply the law to those facts. And though this is quite irrelevant to the issue here, do allow the Plaintiff to explain why he assaulted the staff member that day: namely so that he could get a security transfer out of the Heil-hole that is Lucasville. So he delivered a scratch to the staff's cheek, the response being deliberate torture.

Respectfully submitted,
x Karl Fugate
Karl Fugate # A528-949
878 Coitsville-Hubbard Rd.
Youngstown, Ohio 44505


· EC File ·

# VERIFICATION

I have read the foregoing and hereby verify that the matters alleged herein are true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Youngstown, Ohio on May 23rd, 2020.

✱ Karl Ingate ; Pro Se

· CC File ·



