IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Karl Fugate, | : | |
| | : | Case No. 1:19-cv-00030 |
| Plaintiff, | : | |
| | : | Judge Matthew McFarland |
| v. | : | |
| | : | |
| Ronald Erdos, | : | |
| | : | Magistrate Judge Bowman |
| Defendants, et.al. | : | |

## DECLARATION OF RONALD ERDOS

1. I have personal knowledge of the facts contained in this Declaration. I am competent to testify to the matters stated herein.

2. At or around the time of this incident, I was a Warden of the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, within the province of the Ohio Department of Rehabilitation and Correction (ODRC). I am still the Warden at SOCF. My job duties and responsibilities include overseeing all operations at SOCF, including security of the prison. SOCF is a maximum-security institution that houses Ohio's most troubled offenders.

3. Shortly after the incident, I was notified that Inmate Fugate (A528949) assaulted hearing officer Anderson with a weapon. A weapon was found and confiscated at the scene of the incident. I was advised that sharpened a battery casing was found at the scene, and confiscated, after the incident. I later learned that Anderson suffered a cut across his face as a result of the assault.

4. At that time, SOCF had a rash of serious assaults where inmates, unbeknownst to prison officials, had made and used home-made weapons. To gain control of the situation, I had previously ordered correctional staff to conduct more cell searches.

5. I also learned that Plaintiff was at the hearing because he had recently assaulted another inmate. I was advised Plaintiff was apparently upset at not having his security level increased because he wanted a transfer to Ohio State Penitentiary (OSP). After the incident, per policy, he was taken to J1.

6.. Because Plaintiff was being housed in J1, under post-orders, he always subject to an unplanned cell-search based on the discretion of security staff. J1 is where inmates are housed who have committed the most violent offense until such time it is determined that

       he can be safely housed in an open front cell in another extended restrictive housing (ERH) cell block.

7. Under post-orders at the time, every inmate in slammer cells (cell 11-15), or the double cell (cell 5), had to be searched during first and second shift. These cells are reserved for inmates deemed particularly dangerous to staff and other inmates. These searches are routinely conducted early in the shift by guards assigned to J1.

8. At J1, guards conduct these searches in the following manner: First they open the gate to the corridor outside the cells, and walk to the cell of the inmate intended to be searched. The guard then orders the inmate to cuff-up, where the inmate turns his back to the cuff-port and allows himself to be cuffed. After cuffing the inmate, the guard then leaves the corridor, through the gate, which is then shut, and the cell door is electronically opened. The inmate is then ordered to the shower, where he was secured, and then strip searched. The guard then walks to the opened cell where he conducts a search of the cell. After the cell is searched, the guard leaves the corridor, and the inmate (handcuffed) is allowed to walk back to his cell from the shower, where the cell door is closed. Then the guard walks to the front of the cell, and takes off the restraints from the cuff-port.

9. Plaintiff's attack on Anderson was particular brazen and disturbing: Plaintiff had attacked a hearing officer with a weapon during an administrative hearing. Furthermore, a home-made weapon was found at the scene shortly after the incident. As stated previously, his apparent motive for the assault was a desire to transfer to OSP. Because I could not transfer him to OSP immediately, based on the aforementioned concerns, I believed Plaintiff was particularly dangerous and could potentially assault another inmate or staff to obtain his goal.

10. Because of the security risk, I ordered Captain Whitman to advise staff that Plaintiff was be searched every shift. Given that Plaintiff had attacked an inmate, and then staff, and threatened to continue to engage in such behavior unless and until he was transferred to Ohio State Penitentiary, I believed him to be particularly dangerous. In other words, if he attacked another prisoner or staff, he could do so with a weapon, concealed on his person or cell. I was particularly concerned about Plaintiff obtaining a weapon from a porter, at the end of second, after the guards conduct their searches. Thus, I ordered that Plaintiff be searched on third shift.

11. In accordance with my directive, along with post-orders for J1, Plaintiff Fugate was searched, along with his cell, specifically for weapons, during every shift, for roughly thirty days. To be precise, under post-orders, Plaintiff was searched every day during first and second shift. Due to safety concerns, I ordered that he additionally be searched during third shift. It is my understanding no weapons were found.

12. Plaintiff was housed in J1 until June 6, 2017, when he was transferred to the Ohio State Penitentiary (OSP). OSP is ODRC's highest-level security institution, and houses level-5 inmates, Ohio's most dangerous inmates.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020.

_____
Ronald Erdos, Warden of SOCF