IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Karl Fugate, | : | |
| | : | Case No. 1:19-cv-00030 |
| Plaintiff, | : | |
| | : | Judge Matthew McFarland |
| v. | : | |
| | : | |
| Ronald Erdos, | : | |
| | : | Magistrate Judge Bowman |
| Defendants, et.al. | : | |

**DEFENDANTS McCOY, FRI, ESHEM, & FELT'S OPPOSITION TO SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants Edgel Eshem, Garth Fri, John McCoy, and Brian Felts oppose Plaintiff Karl Fugate's Motion for Summary Judgment, and in the alternative, moves this Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment in their favor. The grounds for this opposition and motion are set forth more fully in the attached memorandum.

Respectfully submitted,
 DAVE YOST
Ohio Attorney General

/s/ *Thomas E. Madden*

THOMAS E. MADDEN (0077069)
    *Lead Trial Attorney*
Senior Assistant Attorney General
Criminal Justice Section
150 East Gay Street – 16th Floor
Columbus, Ohio 43215
Tel:  (614) 644-7233
Fax:  (866) 239-5489
Thomas.madden@ohioattorneygeneral.gov

*Counsel for Defendants*

## **MEMORANDUM**

### I. INTRODUCTION

Not only should this Court deny Inmate Fugate's request for summary judgment, but rather, based on the undisputed evidence attached, this Court should grant summary judgment in favor of Defendants McCoy, Eshem, Fri, and Felts. Plaintiff Fugate viciously attacked hearing officer Anderson during a security classification hearing, where his classification was being considered based on a recent attack on another inmate. Anderson suffered a gash across his face. Reacting quickly, Defendants Fri and McCoy wrestled Plaintiff to the ground and subdued him. Incredibly, Plaintiff now claims *their force* was excessive. After he was secured, Defendants Felts and Eshem, along with other guards (which did not include Defendant Fri), escorted Plaintiff to the infirmary. This escort is on video, which refutes his allegations of excessive during the escort. Finally, without any corroboration, Plaintiff asserts he was assaulted by Defendants Fri, Felts, and Eshem in the infirmary. However, Defendant Fri was not even there, and there is no evidence to substantiate his allegations. Given that Plaintiff Fugate has just viciously attacked a staff member, and the Defendants reasonably reacted to the situation brought about by Plaintiff's acts of violence, this Court should deny Plaintiff's request for summary judgment, and grant Defendants' motion for summary judgment.

### II. PROCEDURAL HISTORY

1. INMATE FUGATE'S COMPLAINT ALLEGATIONS.

Karl Fugate, an inmate in the custody of DRC, alleges that on January 17, 2017, after he admittedly assaulted "unit staff," Defendants Fri and McCoy took him to the ground and placed in him restraints. (Doc. 1, Complaint, PageId# 16.) While on the ground, Plaintiff alleges that Fri and McCoy punched, hit, and kicked him. (*Id*.) According to Plaintiff, after he was laying face

2

down on the floor and handcuffed, McCoy administered "knees and punches" to his body. (*Id*.) Plaintiff also alleges that McCoy hit him with his night stick, without pulling it out, "five or six times, but stopped when he was allegedly cautioned by Fri about the camera in the hallway. (*Id*.)

According to Plaintiff, he was taken to a holding cage. (*Id*.) Plaintiff alleges that Felts ordered Fri to "break [my] arm," which Fri allegedly attempted to do. (*Id*. at PageId# 44.) Plaintiff identified Fri as the person who escorted him to the infirmary, after he was removed from the cage. Again, Fri allegedly tried to break his arm while escorting him to the infirmary. (*Id*.) Before arriving at the infirmary, Felts sprayed Plaintiff in the face with "[a] chemical agent used for riot control." (*Id*.) Plaintiff was blinded and found it hard to breath. (*Id*.) Beside the pain in his arm, and the chemical agent, Plaintiff admits that he was uninjured at this juncture. (*Id*.)

Upon arrival at the infirmary, he was placed in a chair in a side room. (*Id*., PageId# 45.) According to Plaintiff, he was then beaten by Felts, Eshem, and Fri. (*Id*.) According to Plaintiff, Fri beat his body and head. (*Id*.) Fri, Felts, and Eshem then took turns beating him, rending him unconscious. (*Id*.) After he awoke, Fri, Felts, and Eshem allegedly beat him again. (*Id*.) After the alleged beating, a nurse came in and placed a "butterfly" on his right eye. (*Id*.) After the doctor arrived, he was taken to the hospital. (*Id*.) According to Plaintiff, he has suffered a neck injury as a result of the beating, which he received treatment. (*Id*, PageId# 46.) Plaintiff seeks injunctive relief preventing him from being sent back to SOFC. (*Id*, PageId# 49.) He also seeks 1 million dollars for the excessive use of force. (*Id*, PageId# 50.)

After reviewing the Complaint, this Court allowed excessive force claim under the Eighth Amendment to proceed against Defendants Fri, McCoy, Felts, and Eshem. This Court also allowed

3

a claim under the Fourth and Eighth Amendment against Warden Erdos for ordering the strip-searches. (Doc. 4, Order, PageId# 64.)

2. THE FACTS

Due to a recent assault on another inmate, Plaintiff Fugate was in the RIB area of J Block for a classification review before Hearing Officer Anderson and Correction Specialist Nolan. (Ex. I, Nolan, ¶ 3.) Fugate is handcuffed when he enters the hearing room. (Ex. B, Video, 026-17c, 11:24.18.) At the hearing, hearing officer Michael Anderson advised him that his security status was not being raised to level 5, but rather, he was to remain a level 4B. (Ex. I, Nolan dec., ¶3.) Plaintiff asked if he was being referred to 5B, and responded "that's wrong, I should be going to 5B." (Ex. I, Nolan, ¶ 3; Ex. H, McCoy dec.,¶ 3; Ex. G, Fri, ¶3.) When asked if he wanted to make a statement, Plaintiff said "No." (Ex. I, Nolan ¶ 3.) When asked if he would sign his paperwork, Plaintiff refused. (*Id*.) Mr. Anderson advised Plaintiff that he could go back to his cell. (*Id*.) Officer McCoy directed Plaintiff by stating "lets go." (Ex. H, McCoy, ¶ 3.)

As Mr. Anderson was writing refused to sign, Plaintiff lunged across the desk and struck Anderson in the face (left cheek). (Ex. I, Nolan, ¶4; Ex. H, McCoy, ¶ 4; Ex. G, Fri, ¶4; Ex. B, Video 026-17c, 11:24:51.)[1] To everyone's surprise, Plaintiff was uncuffed. (*Id*.) Corrections Officer Fri and McCoy grabbed Plaintiff and attempted to subdue him (Ex. I, Nolan, ¶5; Ex. H, McCoy, ¶5.) To subdue Plaintiff, both McCoy and Fri struck Plaintiff in his facial area with closed fist strikes. (Ex. H, McCoy, ¶ 5, Ex. G, Fri, ¶6.) In attempt to avoid being subdued, Plaintiff resisted. (Ex. I, Nolan, ¶5; Ex. H, McCoy, ¶5; Ex. G, Fri, ¶6.) The scuffle caused a computer,

---

[1] The video comes from a video camera located in the hallway, and you can only see what takes place in the hearing room from the door. (Ex. B, Video 026.17c.)

monitor, and key board to fall off the desk and crash to the ground. (Ex. I, Nolan, ¶ 5, Ex. H, McCoy, ¶5.) Officers Fri and McCoy continued to give Plaintiff direct orders to give up his arms, and cuff up. (Ex. I, Nolan, ¶ 5, Ex. H, McCoy, ¶ 5; Ex. G, Fri, ¶5.) Plaintiff refused to comply. (*Id*.) Plaintiff continued swinging his arms, and used the wall as leverage to spin his lower torso, and mule kick both legs at Fri and McCoy. (Ex. I, Nolan dec., at ¶7.) After 15 to 20 seconds, Fri was then able to gain control of Plaintiff's arms and cuff him. (Ex. I, Nolan, ¶ 7, Ex. H, McCoy, ¶ 7; Ex. G, Fri, ¶6.) At no time during this altercation did McCoy jab Plaintiff with his PR stick. (Ex. H, McCoy, ¶ 5.) Although handcuffed, Plaintiff continued to resist and refused to stand. (*Id*.) Eventually, Plaintiff was removed from the hearing room to a strip cage in J-2. (Ex. H, McCoy, ¶ 8; Ex. G, Fri, ¶7; Video Ex. B, 026-17c, 11:26:00; 026-17b, 11:26:31.) Plaintiff still continued to resist as he was escorted out of the office. (Ex. I, Nolan, ¶ 7.) Both McCoy and Fri were relieved from the escort after placing Plaintiff in the holding cell in J2. (Ex. H, McCoy, ¶ 8; Ex. G, Fri, ¶7.) At no time did Officer Fri attempt to break Plaintiff's arm during the escort to J2. (Ex. G, Fri, ¶7.) Plaintiff was non-compliant and struggling with staff during the escort. (Ex. J, Felts, ¶ 4.) Neither McCoy nor Fri took part in Plaintiff's escort to the infirmary. (Ex. H, McCoy, ¶ 8; Ex. G, Fri, ¶7.) Anderson suffered a laceration on his left cheek from the attack. (Ex. D, U of F Rpt, p. 74-75; Ex. I, Nolan, ¶ 9.)

According the Fugate, "I had already had it planned in my mind that the next time I [saw Anderson] and I didn't have cuffs on I was going to assault him… and, that's what I did. Assault him." (Ex. Q, Fugate, depo., p. 7.) Fugate does not deny that he assaulted Anderson (*Id*.)

Eventually, Plaintiff was escorted out of J-2 to the infirmary by Sgt. Felts, Sgt. Bear, and C.O. Eshem. (Ex. J, Felts, ¶ 5, Ex. K, Eshem, ¶5; Ex. B, Video, 027-17, 027-17b, 027-17c, 017-17d, 028-17a, 027-17b.) Officer Fri did not participate in the escort of Plaintiff to the infirmary. (Ex.

5

G, Fri, ¶7; Ex. J, Felts, ¶ 5.) During the escort, Plaintiff was bleeding from his mouth. (Ex. J, Felts, ¶ 6.) Plaintiff then unexpectedly made a hocking sound as if he was going to spit. (*Id*.) Plaintiff then made a quick movement to his right. (Ex. J, Felts, ¶ 6; Ex. K, Eshem, ¶ 6.) Sgt. Felts deployed OC spay at Plaintiff to prevent him from spitting blood at the escorting officers. (Ex. J, Felts, ¶ 6; Ex. K, Eshem, ¶ 6.) When Sgt. Felts deployed OC spray, it hit Sgt. Bear in the face. (Ex. L, Ruckel, ¶4.) Due to this, Sgt. Bear was relieved form the escort by Officer Charles Ruckel. (*Id*.) Plaintiff, upon his arrival at the infirmary, was placed in a holding cage until he could be seen by medical staff. (Ex. J, Felts, ¶ 7, Ex. K, Eshem, ¶7) No force was used against Plaintiff at the infirmary. (Ex. J, Felts, ¶ 7, Ex. L, Ruckel, ¶ 5, Ex. K, Eshem, ¶ 12.) After Plaintiff was seen by nursing staff, Sgt. Felts, C.O. Ruckel, a Lt. Eshem were relieved. (Ex. J, Felts, ¶ 7.)

Officer Cooper responded to the incident after it was over, and noticed Anderson's cut on his face. (Ex. M, Cooper dec. ¶3.) Later, Officer Cooper was asked to search for any weapons at the scene of the incident, which was in disarray given the struggle, and found a flattened piece of a battery case. (*Id*, ¶ 3,4.) The battery case was sharpened to an edge. (*Id*., ¶4.) The battery case was located in the center of the desk. (*Id*.) Cooper confiscated the weapon. (*Id*.)

### III. INMATE FUGATE FAILS TO MEET THE REQUIREMENTS TO SUCCEED ON A MOTION FOR SUMMARY JUDGMENT

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to materials in the record, including depositions, documents, affidavits or declarations, stipulations, admissions, or interrogatory answers, etc. *See* Fed. R. Civ. P. 56(c). Summary judgment will not

lie if there is a genuine dispute about material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is 'genuine' when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dearing v. Mahalman,* No. 1:11-cv-204, 2013 U.S. Dist. LEXIS 188064, * 8 (S.D. Ohio Oct. 7, 2013) (citing *Anderson,* 477 U.S. at 248). Moreover, on a motion for summary judgment the court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir. 2003) (citing *Anderson,* 477 U.S. at 255).

Once the moving party has met its burden of production, the non-moving party cannot rest on mere allegations or denials of his pleadings, but must present "significant probative evidence in support of his complaint to defeat the motion for summary judgment." *Dearing, 2*013 U.S. Dist. LEXIS at * 8 (citing *Anderson,* 477 U.S. at 248). General averments or conclusory allegations of an affidavit, however, do not create specific fact disputes for summary judgment purposes. *Pierce v. Ohio Dept. of Rehab. and Corr.,* 284 F.Supp.2d 811, 822, (N.D. Ohio 2003) (citing *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888-89, (1990)). Additionally, "[t]he mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party." *Dearing, 2*013 U.S. Dist. LEXIS at * 8 (citing *Anderson,* 477 U.S. at 252). Summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp v. Catrett*, 417 U.S. 317, 322 (1986); *see also Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

1. **Evidence refutes Inmate Fugate's allegations that CO Felts, Eshem, Fri, or McCoy acted maliciously or sadistically.**

"[O]nly the 'unnecessary and wanton infliction of pain'… constitutes cruel and unusual punishment." *Whitley v. Ablers*, 475 U.S. 312, 105 S.Ct. 1078, 1085 (1986). As such, the Eighth Amendment only prohibits conduct that equates to the engagement in the "unnecessary and wanton" infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Actions by correctional staff are "unnecessary and wanton" when that conduct is without any penological justification. *Id*. "'That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Hudson*, 503 U.S. at 9. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995).

"Whenever a prison official is accused of using excessive physical force in violation of the Eighth Amendment, 'the core judicial inquiry'… is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson*, 503 U.S. at 6-7. The Supreme Court has made it clear that "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("An inmate who claims of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim.") "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parris v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

Plaintiff does not appear to seek summary judgment on the use of force used by McCoy and Fri after he attacked Anderson, or Felts use of OC spray. (Doc. 54, MSJ, PageId# 268-269.) Instead, Plaintiff only argues that the video demonstrates that because he lacks "injuries to [his] face as he was being led down the hallways to the infirmary[,]" this proves he was assaulted in the infirmary. (*Id*.) However, the photo of his face only shows that two large bandages were placed

8

on his forehead. (Doc. 54-1, MSJ Exhibits, PageId# 273-274.) The medical report only states that an "[a]brasion [was] present on his mid-forehead." (Ex. D, U of F Rpt., p. 53.) There is nothing in the record that describes the abrasion. The fact that the nurse placed two large bandages on this forehead does not entitle Plaintiff to summary judgment. In fact, Plaintiff insists that Fri was the primary person who assaulted him in the infirmary. (Doc. 3, Complaint, PageId# 45.) However, the video proves Fri did not participate in the escort to the infirmary, as Plaintiff alleges, and Fri denies he even went to the infirmary. (Ex. B, Video; Ex. G, Fri, ¶7, 8.) All the Defendants deny that an assault occurred at the infirmary. (Ex. J, Felts, ¶7; Ex. K, Eshem, ¶12.) Officer Ruckel denies that any assault took place in the infirmary. (Ex. L, Ruckel, ¶5.) Plaintiff has never alleged that McCoy was present in the infirmary or took part in the alleged beating. Thus, Plaintiff is not entitled to summary judgment.

## IV. CROSS-MOTION FOR SUMMARY JUDGMENT.

### A. STANDARD.

As the facts and analysis clearly show, Defendants are entitled to summary judgment as a matter of law. As the Supreme Court of the United States has emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.

9

Ct. 2505, 91 L. Ed. 2d 202 (1986). And when opposing parties tell two different stories—one of which is blatantly contradicted by a video record so that no reasonable jury could believe it—a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Instead, those facts should be viewed "in the light depicted by the videotape." *Id.* at 381.

Moreover, on summary judgment review, the court must determine whether the evidence presents a sufficient dispute of material fact so as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at, 251-52. Where, however, a plaintiff's version of the facts is "conclusively contradicted by the record that no reasonable jury could believe it", a Court need not rely on the nonmovant's version that is so "utterly discredited by the record" as to render it a "visible fiction." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).

Furthermore, as established by the Sixth Circuit in *Reich v. City of Elizabethtown*, 945 F.3d 968, (6th Cir. 2019) "[t]hough we view the facts in the light most favorable to [the non-moving party], we note that [his] version of events only faintly resembles the picture offered by the officers, the eyewitnesses, and the medical evidence." Thus, "all *reasonable* inferences are drawn in favor of the plaintiff, to the extent supported by the record." *Reich v. City of Elizabethtown*, 945 F.3d at 980 (quoting *Chappell*, 585 F.3d at 909) (emphasis in original).

B. ARGUMENT.

> a. **Defendants Fri, McCoy, Eshem, and Felts are entitled to summary judgment on Plaintiff's excessive use-of-force claim.**

The Eighth Amendment prohibition on cruel and unusual punishment protects prison inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). When a prison official

10

is accused of using excessive force, the core judicial inquiry has both a subjective and objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). The subjective component focuses on the prison official's state of mind, and whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court must consider several factors: the threat reasonably perceived by the responsible official, the need for the use of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Combs*, 315 F.3d at 556-57; *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.

On the other hand, the objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580; *Williams*, 631 F.3d at 383. As the Supreme Court of the United States has stated, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10; *Rafferty v. Trumbull Cty.*, 915 F.3d 1087, 1094 (6th Cir. 2019). Rather, the Eighth Amendment protects prisoners only from that conduct which is "repugnant to the conscience of mankind" and excludes "*de minimis* uses of physical force." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10).

In addition, this Court has recognized prevailing cases from the Sixth Circuit that gives deference to prison officials using force in maintaining institutional discipline and security. *See, e.g.*, *Anderson v. Lawless*, 2017 U.S. Dist. LEXIS 209814, at *17 (Dec. 21, 2017) (citing *Combs*, 315 F.3d at 556-57). On occasion, the maintenance of prison security and discipline may require that inmates be subjected to physical contacts actionable as assault under the common law. *Pelfrey*

11

*v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs*, 315 F.3d at 557.

Subjectively and objectively applied, no reasonably jury could find in favor of Inmate Fugate after viewing all evidence in the light most favorable to him. Fugate's version of the facts is so conclusively contradicted by the record so as to render it a "visible fiction" as articulated by the Sixth Circuit Court of Appeals. *Chappell v. City of Cleveland*, 585, F.3d 901, 906 (6th Cir. 2009). Furthermore, as established by the Sixth Circuit in *Reich v. City of Elizabethtown*, "[t]hough we view the facts in the light most favorable to [the non-moving party], we note that her version of events only faintly resembles the picture offered by the officers, the eyewitnesses, and the medical evidence." Thus, "all *reasonable* inferences are drawn in favor of the plaintiff, to the extent supported by the record." *Reich v. City of Elizabethtown*, 945 F.3d at 980 (quoting *Chappell*, 585, F.3d at 909) (emphasis in original).

> **b. The evidence refutes Fugate's claims of an Eighth Amendment violation.**

It is well recognized that prisons, by their very nature, "are dangerous places." *Johnson v. California*, 543 U.S. 499, 515 (2005). "Prisons, by definition, are places of involuntary confinement of persons who have demonstrated proclivity for antisocial criminal, and often violent, conduct… [and] have necessarily shown a lapse in the ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint[.]" *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). This Court should be mindful that "prison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative

personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Whitley*, 106 S.Ct. at 1084.

Under Ohio law, corrections officer may use less-than-deadly force against an inmate in certain circumstances. Ohio Adm.Code 5120–9–01(C)(2). "Excessive force" is that which exceeds what reasonably appears to be necessary under all the circumstances surrounding the incident. Ohio Adm.Code 5120–9–01(B)(3). One of several relevant circumstances when corrections officers are authorized to use less-than-deadly force is:

a) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.

\* \* \* \* \*

(Emphasis added.) Ohio Adm. Code 5120-9-01(C)(2). This section applies in this case. The Supreme Court has instructed lower courts that "[p]rison administrators… should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, *supra*. at 1085. "Unless it appears that the evidence… will support a *reliable inference* of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.* at 1086. (emphasis added.)

**Officer Garth Fri**

Officer Fri was present in the RIB hearing room, when Plaintiff assaulted Anderson, and Fri acted reasonably in his response to that attack. "[U[ses of force under [omit] split-second circumstances do not 'evince[] such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Davis v. Agosto*, 89 Fed. Appx. 523, 527 (6th Cir. 2004). Fri reasonably took Plaintiff to the ground, and gave Plaintiff direct orders to give

up his hands. (Ex. G, Fri, ¶5.) Plaintiff resisted. (*Id*.) According to Nolan, Fugate "wildly swung his arms" and "was hitting the officers with the ratchet arm of his cuffs." (Ex. I, Nolan, ¶5.) In fact, Fugate tried to mule kick Fri and McCoy. (Ex. I, Nolan, ¶7.) Fri was forced to use closed-fist strikes to Plaintiff's facial area to obtain his right arm, and was eventually able to place cuffs on Plaintiff. (Ex. G, Fri, ¶5, 6.) "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Pelfrey v. Chambers*, 43 F.3d 1034, 1039 (6th Cir. 1995). During the short escort to the strip cage, Fri never tried to break Plaintiff's arm, and video supports that denial. (Ex. G, Fri., ¶7; Ex. B, Video 026-17b, 11:26:33.) The video shows Fri and McCoy placing Plaintiff in the strip cage in J-2 without incident. (Ex. B, Video 026-17b, 11:26:33.) An Eighth Amendment violation will not be found when "*de minimus* use of physical force" is applied, "provided the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010), quoting, *Hudson*, 503 U.S. at 9-10. At his deposition, Plaintiff admitted he had no injuries before going into the infirmary. (Ex. Q, Fugate depo. p. 24.) "[T]he absence of serious injury is quite relevant to an excessive force inquiry[.]" *Baldwin v. Stadler*, 137 F.3d 836, 839 (7th Cir. 1998). Contrary to Plaintiff's assertions, Fri's actions were a good faith effort to restore discipline.

Contrary to Fugate's assertions, Fri is clearly not involved with the escort to the infirmary. (Ex. B, Video 027-17c, 11:28:34.) For good reason, Fri denies assaulting Plaintiff in the infirmary. (Ex. G, Fri, ¶8.) Fri was never in the infirmary. (*Id*.) Moreover, Officer Ruckel never observed any guards assault Fugate in the infirmary. (Ex. L, Ruckel, ¶4.)

**Off. John McCoy**

14

Likewise, Officer McCoy was present when Plaintiff attacked Anderson. McCoy had to use closed fist strikes to stop Plaintiff from resisting. (Ex. H, McCoy, ¶5.) "[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parris v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). Contrary to Plaintiff's assertions, McCoy never used his PR stick, which he would have been justified in using to stop the attack on Anderson. (Ex. H, McCoy, ¶6.) Fugate "swung his arms" and "was hitting the officers with the ratchet arm of his cuffs." (Ex. I, Nolan, ¶7.) With Fri, McCoy was able to get Plaintiff cuffed, and escorted to the strip cage in J-2. (Ex. H, McCoy, ¶7-8; Ex. B, Video 026-17b, 11:26:33.) McCoy's actions were obviously a good faith effort to restore discipline.

Furthermore, Plaintiff admitted he had no injuries before going into the infirmary. (Ex. Q, Fugate depo. p. 24.) "[T]he absence of serious injury is quite relevant to an excessive force inquiry[.]" *Baldwin v. Stadler*, 137 F.3d 836, 839 (7th Cir. 1998). Plaintiff does not allege that McCoy was involved in either the escort or the alleged beating in the infirmary.

**Sgt. Brian Felts**

After initially being placed in the J-2 strip cage, Plaintiff was escorted by Sgt. Felts, Sgt. Bear, and C.O. Eshem to the infirmary. (Ex. J, Felts, ¶5.) Sgt. Felts recognized that Plaintiff's mouth was bleeding, heard him make a hoking sound like he was going to spit, and sprayed him with OC spray when he made a sudden movement to his right as if he was going to spit. (Ex. J., Felts, ¶6.) "[T]here is simply no factual or legal support for the proposition that an officers deployment of a one-second burst of OC spray in response to perceived failure to comply with a direct order and / or perceived spitting threat, could ever satisfy the [Eighth Amendment]." *Bullocks v. Keating*, 2018 U.S. Dist. LEXIS 189406, *17 (S.D. Ohio). Fugate admitted to turning

15

his head towards Sgt. Felts before being sprayed. (Ex. Q; Fugate depo. p. 20.) Furthermore, Plaintiff admitted he had no injuries before going into the infirmary. (Ex. Q, Fugate depo. p. 24.) Sgt. Felts denies assaulting Plaintiff in the infirmary. (Ex. J, Felts, ¶7.) Likewise, Officer Ruckel never observed any guards assault Fugate in the infirmary. (Ex. L, Ruckel, ¶4.)

**Lt. Edgel Eshem**

With Sgt. Bear and Sgt. Felts, Lt. Eshem assisted with the escort of Plaintiff to the infirmary. (Ex. K, Eshem, ¶5; U of F Rpt. P. 15.) According to Eshem, nobody tried to break Plaintiff's arm during the escort to the infirmary. (Ex. K, Eshem, ¶5.) Furthermore, the escort to the infirmary is on video, and does not support Plaintiff's claims that anyone was trying to break his arm. (Ex. B, Videos 027-17; 027-17b; 027-17c, 027-17d, 028-17a.) Rather, the video shows Defendants, and others, escorting a resistant inmate who had just recently assaulted a staff member. (*Id*.) During the escort, Eshem saw Plaintiff suddenly turn towards Sgt. Felts, which led to Sgt. Felts deploying OC spray. (Ex. K, Eshem, ¶6; Ex. D, U of F Rpt., p. 15.) Like everyone else, Eshem denies assaulting Plaintiff in the infirmary. (Ex. K, Eshem, ¶12.) Officer Ruckel never observed any guards assault Fugate in the infirmary. (Ex. L, Ruckel, ¶4.)

### c. McCoy, Fri, Eshem, and Felts are entitled to Qualified Immunity.

McCoy, Fri, Eshem, and Felts should be afforded, and enjoy qualified immunity in this case. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory and constitutional rights which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Inmate Fugate shoulders the burden of showing that Defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

A right is clearly established when "every reasonable official would [have understood] that what he is doing violates that right." *Reichie v. Howards*, 132 S.Ct. 2088, 2093 (2012). Thus, for a right to be "clearly established… [the] existing precedent must have placed the statutory or constitutional right question beyond debate." *Ashcroft v. al-Kid*, 563 U.S. 731, 741 (2011). In other words, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id*. at 743. To overcome a qualified immunity defense, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). The Supreme Court has repeatedly instructed lower courts "not to define clearly established law at a high level of generality." *Mullenix*, 136 S.Ct. at 308. As such, "[t]his inquiry must be undertaken in light of the specific context of the case, not a broad general proposition." *Id*. "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). "Absent controlling authority, we require 'robust consensus of cases of persuasive authority' to constitute clearly established law." *Rush v. Lansing*, 644 Fed. App'x 415, 425 (6th Cir. 2016). The relevant inquiry must take into account the "specific context of the case, [and] not as a broad general proposition," and determine "whether the violative nature of the particular conduct is clearly established." *Mullenix*, 136 S.Ct. at 308.

The relevant excessive use-of-force law was not so clearly established as to overcome a qualified-immunity defense based on the complaint's factual allegations. There is no clearly established law which states that guards may not secure, much less cuff and escort to restrictive housing, after an inmate attacks a staff member. Fri and McCoy used reasonable force to gain control over Fugate, after he attacked Anderson with a weapon. Also, the video shows that they

17

used properly trained and appropriate maneuvers when escorting Fugate to the infirmary, and Plaintiff's allegations that Defendants attempted to break his arm is refuted by the record. Also, Sgt Felts reasonably used OC spray when Plaintiff admittedly turned his head. There areclearly-established rights that say a prison guard can use force in reaction to a spitting incident (or to prevent one). *Hoskins v. Doles*, 902 F.2d 33, 1990 U.S. App. LEXIS, *4 (6th Cir. 1990). Lastly, there is no credible evidence that Defendants Eshem, Fri, and Felts assaulted Plaintiff in the infirmary. In fact, there is conclusive evidence that Defendant Fri was not even in the infirmary when this alleged beating took place.

### V. CONCLUSION

There is no genuine issue of material fact for which a rational jury could find in favor of Inmate Fugate. Fugate viciously attacked hearing Officer Anderson, and Defendants were justified in using force to abate the situation with non-compliant inmate. The actions taken by Defendants clearly does not rise to the level of an Eighth Amendment violation. Because there is no basis for the Court to rule in inmate Fugate's favor, the Court should deny his request for summary judgment, and grant Defendants' motion for summary judgment that is supported by the record.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ *Thomas E. Madden*
THOMAS E. MADDEN (0077069)
Senior Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 995-3234
Fax: (866) 239-5489
Thomas.Madden@OhioAttorneyGeneral.gov

COUNSEL FOR DEFENDANTS

CERTIFICATE OF SERVICE

I certify that the foregoing *Defendant's Opposition to Summary Judgment and Cross Motion* was filed electronically in the Court's ECF system on September 25, 2020, and was served by regular U.S. mail, postage prepaid, to Karl Fugate, #A528-949, Ohio State Penitentiary, 878 Coitsville-Hubbard Road, Youngstown, OH 44505 on September 28, 2020.

/s/ *Thomas E. Madden*
Thomas E. Madden (0077069)
Senior Assistant Attorney General