FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| Karl Fugate, | : | |
| --- | --- | --- |
| | : | Case No. 1:19-cv-00030 |
| Plaintiff, | : | |
| | : | Judge Matthew McFarland |
| v. | : | |
| | : | |
| Ronald Erdos, | : | |
| | : | Magistrate Judge Bowman |
| Defendants, et.al. | : | |

**DEFENDANT McCOY, FRI, ESHEM, & FELT'S REPLY IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. 63.)**

Defendants McCoy, Fri, Eshem, & Felts hereby reply to Fugate's response in opposition to summary judgment. (Doc. 72.) Use of fore by a guard in effort to maintain security does not rise to an Eighth Amendment violation. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Excessive force claims must focus "on the nature of the force rather than the extent of the injury[.]" *Id*. "[T]he extent of a prisoner's injury may help determine the amount of force used by the prison official[.]" *Cordell v. McKinney*, 759 F.3d 580, 580-81 (6th Cir. 2014).

Plaintiff begins by acknowledging "he assaulted a staff member." (Doc. 72, Response, PageId# 1087.) Plaintiff further admits that he assaulted the guard to obtain a transfer "the Ohio State Penitentiary, where living conditions are much better." (Id.) In other words, to obtain a transfer, Plaintiff purposefully "perpetrat[ed] another act of violence. This time on a staff member." (Id.) Essentially, Plaintiff boasts about his own proclivity for violence. He admits he is a dangerous inmate. With these admissions, Defendants Fri and McCoy clearly used reasonable

force to gain control of Plaintiff immediately after he admittedly attacked a staff member. (Doc. 63-Nolan, ¶5; McCoy, ¶5.) Plaintiff takes issue with the measures Fri and McCoy used to gain control of Plaintiff immediately after the attack (Doc. 72, PageId# 1091), but those measures were obviously "applied in a good-faith effort to maintain or restore [order]." *Whitley*, 475 U.S. at 327.

As to Defendant Fri, Plaintiff admits that he could be mistaken about Fri's involvement during the escort and in the infirmary. (Doc. 72, PageId# 1095.) Plaintiff makes no mention of the facial OC spray incident other than to suggest it may have cause him to admittedly misidentify Defendant Fri. (Id.) Eventually, he invites the Court to dismiss Defendant Fri after watching the video. (Doc. 72, PageId# 1097.) Plaintiff then asserts Defendant Felt's alleged "armbreaking" during the escort to be "irrelevant." (Id. at #1097.) Remarkably, Plaintiff then states his "8th Amendment claims isn't about anything else other than what occurred in the infirmary[.]" (Id.)

In his response, Plaintiff puts all of his eggs in the infirmary basket. (Id.) According to Plaintiff's own admission, "Plaintiff's 8th Amendment claim… doesn't involve anything other than what happened to him in the infirmary[.]" (Id.) Based on that concession, Defendants McCoy and Fri should be immediately dismissed, given they were relieved well before Plaintiff was escorted to the infirmary. (Doc. 63-7, Doc. 63-6; McCoy dec., ¶ 8; Fri, dec. ¶8; PageId# 958, 960.) Plaintiff was escorted out of J-2 to the infirmary by Defendant Felts and Defendant Eshem. (Doc.63-9, 63-10, 63-11; PageId# 964, 967, 968; Felts, ¶ 5, Eshem, ¶5, Ruckel ¶5; Doc.. 63-1, Video, 027-17, 027-17b, 027-17c, 017-17d, 028-17a, 027-17b.) Plaintiff no longer even contends otherwise.

Plaintiff exaggerates that he was "nearly beat to death" while in the infirmary. (Doc. 72, PageId# 1099.) According to Plaintiff's complaint, he was beaten by Felts, Eshem, and Fri. (Id.) According to Plaintiff, Fri beat his body and head. (Id.) Fri, Felts, and Eshem then took turns

beating him, rending him unconscious. (Id.) After he awoke, Fri, Fels, and Eshem allegedly beat him again. (Id.) However, Felts, Eshem, and Ruckel deny this contention. (Doc. 63-9, Felts dec., ¶7; PageId# 964; Doc. 63-11, Ruckel dec., ¶5; PageId# 968; Doc. 63-3; U of F report, pg. 15; PageId# 877.) Furthermore, the injuries he actually suffered do not support his allegations of what purportedly occurred. (Doc. 63-3, Medical Exam Rpt.; PageId# 15.) Fugate had a cut above his right brow, pink discoloration above his right ear, and pink discoloration to his left eye and jaw. (Id.) He was then given ibuprofen. (Id.) Also, according to the nurses' report, Plaintiff had "no complaints of dizziness or reported loss of consciousness." (Doc. 63-3, PageId# 915.) This directly contradicts Plaintiff's fanciful version that he was allegedly beaten by three guards to this head, and suffered unconsciousness. Plaintiff has provided no other medical records to support any of his alleged injuries. These minor injuries, which were reported in the medical report, were clearly caused by the altercation that occurred in the hearing room, by Defendants Fri and McCoy, who were reasonably attempting to subdue a violent inmate, immediately after Plaintiff admittedly attacked hearing officer Anderson. These certainly do not support the imaginary beating Plaintiff allegedly sustained in the infirmary.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

/s/ *Thomas E. Madden*
THOMAS E. MADDEN (0077069)
Senior Assistant Attorney General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 995-3234
Fax: (866) 239-5489
Thomas.Madden@OhioAttorneyGeneral.gov

COUNSEL FOR DEFENDANT

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing *Defendants' Reply in Support of his Cross Motion for Summary Judgment* was filed via electronic transmission on December 21, 2020, and was sent by regular, first-class mail to Karl Fugate, #A528-949, Ohio State Penitentiary, 878 Coitsville-Hubbard Road, Youngstown, OH 44505.

                                        *s/Thomas E. Madden*
                                        THOMAS E. MADDEN (0077069)
                                        Senior Assistant Attorney General