UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KARL FUGATE, | : | Case No. 1:19-cv-30 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | Magistrate Judge Stephanie K. Bowman |
| RONALD ERDOS, *et al.*, | : | |
| Defendants. | : | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATIONS (Doc. 80); DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (Doc. 54); DENYING DEFENDANT
WARDEN ERDOS'S MOTION FOR SUMMARY JUDGMENT (Doc. 61); AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS ESHEM,
FELTS, FRI, AND MCCOY'S MOTION FOR SUMMARY JUDGMENT (Doc. 63)**

This case is before the Court pursuant to the Order of General Reference to United States Magistrate Judge Stephanie K. Bowman. On January 22, 2021, the Magistrate Judge issued a Report and Recommendations (the "R&R"). (Doc. 80). Defendants filed objections to the R&R on April 7, 2021. (Doc. 83). Plaintiff responded to Defendants' objections but did not present his own objections. (Doc. 85).

## I. BACKGROUND

In this case, *pro se* Plaintiff Karl Fugate alleges violations of his rights under the Fourth and Eighth Amendments to the Constitution. Plaintiff Karl Fugate is an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). Defendants are Ronald Erdos, the Warden at the Southern Ohio Correctional Facility

("SOCF"), and four other ODRC employees—Lt. Edgel Eshem, Sgt. Brian Felts, Officer Garth Fri, and Officer John McCoy.

In the R&R, the Magistrate Judge accurately summarized the relevant factual background as follows:

> During his incarceration [at SOCF], Plaintiff assaulted a fellow inmate and later, a correctional officer. He complains that the Defendants violated his constitutional rights in retribution for Plaintiff's assault on staff. Specifically, he alleges that after he assaulted the officer, multiple officers transported him to a room inside the SOCF infirmary where no cameras were present and used excessive force in violation of the Eighth Amendment. Plaintiff was transported by squad to the Ohio State University Emergency Room at the direction of SOCF medical staff on the date in question. Following his return to SOCF, Plaintiff was confined to a "slammer cell"[1] and strip searched 3 times per day for 30 days pursuant to the order of Warden Erdos. He alleges that the thrice-daily strip searches violated the Fourth and Eighth Amendment. (Doc. 80 at 2-3).

Upon an earlier recommendation of the Magistrate Judge, the Court dismissed several claims but allowed Plaintiff to proceed on his Eighth Amendment claims against Fri, McCoy, Felts and Eshem; and on Eighth _and_ Fourth Amendment claims against Erdos. (Docs. 4, 7). The Court then denied a motion to dismiss all claims and clarified the claims could proceed against all Defendants as individuals. (Doc. 34). All parties have now moved for summary judgment. (Docs. 54, 61, and 63). Warden Erdos has filed his own individual motion. (Doc. 61). The rest of the Defendants filed for summary judgment together in another filing. (Doc. 63).

---

[1] The "slammer cell" is a segregated cell with only a "little window," per Plaintiff. (Doc. 78-1 at 62).

2

## II. STANDARD OF REVIEW

When a party objects to a magistrate judge's recommended disposition of a motion for summary judgment, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The Court then "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636(b)(1).

## III. ANALYSIS

Before getting to the legal analysis, the Court summarizes what is and what is not properly before it. To do so, the Court must also look to the specific recommendations in the R&R and the objections thereto.

The R&R recommends denying summary judgment in favor of Plaintiff and denying summary judgment in favor of Defendant-Erdos—in both cases, in all respects. (Doc. 80 at 29). Plaintiff has not filed objections. Defendant-Erdos has. (Doc. 83). Accordingly, Defendant-Erdos's objections to the R&R <u>are properly before the Court</u>.

The R&R recommends granting summary judgment in favor of Defendants Fri and McCoy on all claims. (Doc. 80 at 29). Plaintiff does not object. Thus, the Court will adopt such recommendations.

The R&R draws a distinction between any conduct taking place <u>before</u> Plaintiff was taken into the camera-less room in the SOCF "infirmary"—and conduct that took place <u>in</u> the infirmary and afterward. (*Id.*). Specifically, the Magistrate Judge recommends summary judgment should be granted to Defendants on any claim of

3

excessive force <u>prior to Plaintiff's entry into the infirmary</u>. (*Id.*). No party objects on this point. Accordingly, the Court will adopt this portion of the R&R and award summary judgment in favor of Defendants for any claims of excessive force prior to Plaintiff's entry into the infirmary.

Finally, the Magistrate Judge recommends denying summary judgment to Defendants Felts and Eshem for the force used against Plaintiff <u>in</u> the infirmary. Defendants object. Accordingly, Defendants Felts and Eshem's objections to the R&R <u>are properly before the Court</u>.

Defendants' objections comprise several arguments. Defendants contend that the Magistrate Judge erred in her consideration of Plaintiff's Fourth Amendment and Eighth Amendment claims against Warden Erdos, both on consideration of the evidence and with respect to the entitlement to qualified immunity. Defendants further contend that the Magistrate Judge should have recommended the entry of summary judgment for Lt. Eshem and Sgt. Felts on Plaintiff's Eighth Amendment claim. As to that claim, Defendants likewise contend that Lt. Eshem and Sgt. Felts were entitled to qualified immunity. The Court addresses each of these arguments in turn, focusing on the specific objections raised by Defendants.

    **A.    Plaintiff's Claims Against Warden Erdos on the Merits**

        1.    ***The Fourth Amendment Claim***

            a.    The Scope, Manner, and Location of the Search

Defendants argue the Magistrate Judge incorrectly found the existence of a genuine issue of material fact concerning the constitutionality of the scope, manner, and

location of the search. In particular, they object to the Magistrate Judge's finding that "the record creates a reasonable inference that on at least one occasion, Plaintiff was observed by more officers than was necessary for any penological purpose." (Doc. 80 at PageID# 1252.) In reaching this determination, the Magistrate Judge relied on Plaintiff's testimony that, on the morning after he assaulted an officer, "probably seven COs [correctional officers] and a white shirt"[2] came to his cell to retrieve him for a search. (Doc. 78-1 at 61.) Plaintiff further testified that he was taken to the shower where one officer conducted the strip search and "the rest was – and the white shirt was in the cell looking through the mat." (*Id.*). This testimony is ambiguous. It is not clear whether all seven COs who retrieved Plaintiff observed the strip search or just one officer—the officer conducting the search—and one "white shirt." Captain J.D. Whitman testified that Plaintiff was temporarily housed in J1, where inmates with disciplinary issues are often housed. (Doc. 66-2 at ¶ 3, PageID# 1048.) Under the post orders for J1 at the time, every inmate in "slammer cells" or the double cell had to be strip-searched during first and second shift. (*Id.* at ¶ 5, PageID# 1048-49.) "Routinely, the prisoner, a guard, and a supervisor are present during a strip-search." (*Id.* at PageID# 1049.)

The Magistrate Judge construed the evidence in the light most favorable to Plaintiff and found that it is possible to infer that eight people (all seven COs and the

---

[2] Through context, Plaintiff's deposition testimony makes clear a "white shirt" is a prison official with more authority than a "CO"—correctional officer. (Doc. 78-1). Also, according to Plaintiff, a white shirt had to be present to conduct the searches of Plaintiff. COs would not do them by themselves. (*Id.* at 66).

5

supervising officer) witnessed Plaintiff's initial search. (Doc. 80 at 19). The Court finds that the Magistrate Judge did not err in reaching this determination.

Defendants also object that there is no evidence connecting Warden Erdos to the manner in which the searches were conducted. (Doc. 83 at 13). There is email evidence, as Defendants concede, that Warden Erdos ordered Plaintiff to be strip searched at the beginning of each shift, for a total of three times per day. Defendants claim that the Erdos's email only proves that Erdos ordered that the searches be conducted, not the manner in which they were allegedly performed.

Relying on *Pineda v. Hamilton Cty*, Defendants argue tort law guides §1983 claims like the present one. For that reason, "…a § 1983 plaintiff generally must prove both that a defendant was personally at fault and that the defendant's culpable conduct (not somebody else's) caused the injury." *Pineda*, 977 F.3d at 490. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). As such, Defendants argue Erdos cannot be liable on a respondeat superior theory—or made to answer for the conduct of his subordinates. (Doc. 83 at PageID# 1283).

While perhaps narrowly correct, Defendant-Erdos' argument here sidesteps a large portion of the Magistrate Judge's reasoning. To summarize that reasoning, in short, the constitutionality of prison searches requires a broader inquiry. See *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013). The Magistrate Judge, in part, anticipates Defendant's argument by stating,

6

"…even if a reviewing court were to find no issue of fact concerning the extent to which [searches of] Plaintiff had an audience, *Bell* and *Stoudemire* teach that courts must consider the totality of circumstances surrounding the scope, manner and location of a search." (Doc. 80 at 19). Thus, even if Erdos did not order that a more-than-necessary number of officers conduct the searches, he could still be liable if he were found to be ordering searches unrelated to a legitimate penological interests. *See Stoudemire*, 705 F.3d at 572.

Moreover, the Court is not convinced there is "no evidence" linking Erdos to the "manner" of the searches, as Defendants claim. There may be no direct evidence. But a reasonable juror could infer Erdos's involvement in the manner of the searches inferentially from, for example, Plaintiff's testimony regarding Erdos's animus toward Plaintiff. The Magistrate Judge calls attention to such inferential evidence. (*See* Doc. 80 at 19-21).

Thus, the Court agrees with the Magistrate Judge that Warden Erdos does not qualify for summary judgment on this point.

                        b.     Deference to the Judgment of Correctional Officials

Plaintiff alleges he was unnecessarily subjected to a strip search multiple times a day. As to this portion of the claim, Defendants argue the Magistrate Judge did not afford proper deference to the Warden. (Doc. 83 at PageID# 1283).

According to Defendants, Warden Erdos required thrice-daily strip searches to ensure that Plaintiff, who had just injured an officer with a concealed makeshift blade, did not have any contraband. (*Id.* at PageID# 1279). Defendants then conclude, because

7

officer safety is a legitimate penological purpose, "courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary and unjustified response to problems of jail security." (*Id.* (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 323 (2012)).). The Magistrate Judge, however, did refer to substantial evidence placing in question the need for multiple strip searches a day of anyone housed in a slammer cell in J1. Defendants take issue with the Magistrate Judge's choice of words—she stated at one point that Plaintiff had presented "some 'proof to the contrary.'" (Doc. 80 at PageID# 1254.) Regardless of the phrasing, the Magistrate Judge referred to substantial evidence in the R&R, thereby removing this case from the category of those requiring the court's deference to correctional officials' judgment. The objection is overruled.

     c.  The Relationship Between the Warden's Penological Objective and the Invasiveness of the Search

Defendants also argue that the Magistrate Judge erred in evaluating the balance between the Warden's interest in the safety of the prison and the directive to conduct multiple strip searches of Plaintiff per day. (Doc. 83 at PageID# 1284). The Court, however, does not see any faults in this analysis. The Magistrate Judge concluded that a reasonable juror could find in either Plaintiff's or the Warden's favor, depending significantly on the juror's conclusions regarding the validity of the professed penological objective. Therefore, the Court overrules the objections to the Magistrate Judge's denial of summary judgment on the merits of the Fourth Amendment claim against Warden Erdos.

### 2. *The Eighth Amendment Claim*

Defendants' first argument regarding the Eighth Amendment claim against Erdos is that, contrary to the conclusion reached in the R&R, Plaintiff failed to present evidence that Warden Erdos acted with the requisite intent. As the Magistrate Judge observed, "[t]he Eighth Amendment safeguards prisoners against the use of searches that correctional officers subjectively intend as a form of punishment." *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020) (en banc) (internal citation omitted). Defendants cite *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002) for the proposition that, in contrast to the Fourth Amendment standard, "the Eighth Amendment standard focuses on the official's obduracy and wantonness, asking whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Phelps*, 286 F.3d at 299 (internal citations and quotations omitted).

Defendants do not claim the Magistrate Judge applied the wrong legal standard. Rather, they assert that Plaintiff's only evidence of intent is the email stating that Warden Erdos ordered the three searches per day and Plaintiff's own assertions that the searches were unnecessary. As discussed above, the necessity of the searches will certainly factor into the jury's assessment of intent. Contrary to Defendants' assertion, however, this was not the only evidence cited in the R&R. The Magistrate Judge also referred to other evidence of malice. For example, around 4 a.m. on the morning of January 18, Warden Erdos showed up at Plaintiff's cell, in the dark, and told him "you're not going to [f****ing] OSP…you're going to stay right here." (Doc. 78-1 at 59-60 (expletive altered).).

9

The Warden's choice of words could connote different things—a jury will have to decide—but a reasonable inference is that the Warden was angry with Plaintiff and chose to keep him in J1 to punish him for assaulting an officer. Plaintiff also testified that he asked a supervising officer when the thrice daily searches would end. In response, one "white shirt" officer complained "you think I want to [f****ing] do this shit?" (Doc. 78-1 at 66 (expletive altered)). The officer told Plaintiff that he asked the warden on a daily basis "when is this going to stop, you know, and he keeps telling me when he feels like it." (*Id.* at 66-67). This is enough evidence to inject a factual dispute as to whether Warden had a penological reason for continuing the searches. The Court finds that the Magistrate Judge's analysis is sound.

### B. Warden Erdos Is Not Entitled to Qualified Immunity

The Magistrate Judge found that Warden Erdos was not entitled to qualified immunity on either of Plaintiff's claims. (Doc. 80 at 27-29). Government officials, including prison officials, are entitled to a presumption of qualified immunity from civil lawsuits seeking damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Koubriti v. Convertino*, 593 F.3d 459, 466-67 (6th Cir. 2010). In assessing qualified immunity, the Court must first ask whether Plaintiff has shown a constitutional violation, and then, whether that right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Defendants first argue that no clearly established law put Warden Erdos on notice that he was violating the Fourth Amendment. (Doc. 83 at PageID# 1290). Defendants

10

rely on *Sumpter v. Wayne County* in their briefing, but the Magistrate Judge distinguished that case because it involved "an uncontested legitimate penological justification (health and safety concerns) for periodically conducting group strip searches when the number of jail inmates waiting to be processed made individual searches imprudent." 868 F.3d 473 (6th Cir. 2017); (Doc. 80 at PageID# 1260 (emphasis in original)). This distinction is valid. *See Sumpter*, 868 F.3d at 484 ("Plaintiff gives us no reason to doubt the legitimacy of defendants' asserted justification."). Here, the legitimacy of the Warden's penological justification is very much contested.

If the jury were to find that the Warden's justification was not legitimate, then the thrice daily strip searches were not constitutional. As early as 2013, when the Sixth Circuit decided *Stoudemire v. Michigan Dep't of Corr.,* 705 F.3d 560, "it was clearly established that suspicionless strip searches were permissible as a matter of constitutional law, but only so long as they were reasonable under the circumstances and performed pursuant to a legitimate penological justification." *Stoudemire*, 705 F.3d at 575. The Court sees no error in this analysis.

The Court also rejects the contention that the Magistrate Judge defined the constitutional right at issue too broadly to put the Warden on notice that his conduct was unconstitutional. The articulated standard in *Stoudemire* is precise and neatly applies to the circumstances in this case. *Stoudemire* dictates that "[a] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual." *Stoudemire*, 705 F.3d at 572-73 (internal quotes omitted) (quoting *Wood v. Clemons*, 89 F.3d 922, 928 (1st Cir. 1996)). Additionally, *Stoudemire*

11

lists, and the Magistrate Judge has analyzed, the factors to consider in judging the reasonableness of a strip search.

If Plaintiff's version of the facts is adopted, then he had no access to contraband while housed in J1 and Warden Erdos therefore had no penological justification for the strip searches. A reasonable officer would have been on notice that subjecting an inmate to multiple strip searches a day without a legitimate penological justification was unconstitutional. *Id.*

Defendants also argue that Warden Erdos is entitled to qualified immunity on the Eighth Amendment claim. The Magistrate Judge denied qualified immunity, finding that, "[a]t the time of the strip searches at issue, it was clearly established that force applied 'maliciously and sadistically to cause harm' violates the Eighth Amendment." (Doc. 80 at 28.) The Court has discussed the evidence that could support a finding of malice. Defendants argue Warden Erdos would not have known that ordering the strip searches "in the wake of a violent attack by [an] inmate" was unlawful. (Doc. 83 at PageID# 1294.) This argument simply re-raises the question—discussed above—of whether the Warden had a penological justification. If the jury finds that he did, then it might also find that the evidence of malice is not persuasive. On summary judgment, the facts must be construed in favor of the non-movant. When so construed, the Magistrate Judge's conclusion is correct. Accordingly, Defendants' objections are overruled.

### C. The Eighth Amendment and Cognizable Injury

When addressing Warden Erdos's qualified immunity defense, the Magistrate Judge *sua sponte* raised the issue of whether Plaintiff's injuries were cognizable under

the Eighth Amendment. While two unpublished cases held that non-physical injuries due to a strip search were not compensable under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), the Magistrate Judge was persuaded by more recent, published case law that §1997e(e) "does not bar claims for constitutional injury that do not also involve physical injury." (Doc. 80 at PageID# 1261 (quoting *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015)).). The Magistrate Judge further opined that even if a reviewing court were to conclude that the law concerning Plaintiff's claim for compensatory damages under the Eighth Amendment is not clearly established, his claim for punitive damages is still cognizable. (Doc. 80 at PageID# 1262, citing *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020).). While Defendants urge the Court to adopt the contrary view—which has been adopted by other circuits—that a plaintiff must allege physical injuries to state a cognizable claim under the Eighth Amendment, the Court declines. The Magistrate Judge's analysis follows the most recent, published decisions in the Sixth Circuit. Even though there is not a firmly established body of case law in this area, the Court does not see any flaw in the Magistrate Judge's analysis.

      **D.**     **Plaintiff's Claims Against Defendants Felt and Eshem**

          *1.*     *Plaintiff's Eighth Amendment Claim*

The Magistrate Judge recommended the denial of Defendants Felt's and Eshem's cross-motion for summary judgment for the alleged attack in the infirmary. (Doc. 83 at PageID# 1296). Defendants argue that this recommendation should not be adopted and cite their own testimony in support. (*Id.* at PageID# 1297-1299). Defendants fail to argue, however, why this Court should ignore the additional evidence cited in the R&R.

13

That evidence supports the Magistrate Judge's recommended disposition of this claim and therefore Defendants' objections based exclusively on their own evidence and testimony are overruled.

Defendants also argue that there was no evidence that Felts and Eshem maliciously and sadistically beat Plaintiff in the infirmary. *See Whitley v. Ablers*, 475 U.S. 312, 10 S.Ct. 1078, 1085 (1986) ([O]nly the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment."). Defendants do not claim there was a justification for physically assaulting Plaintiff in the infirmary. Instead, they argue that no assault occurred at all. In support, they again refer to Felts's and Eshem's denials that they beat Plaintiff in the infirmary. (Doc. 83 at PageID# 1299). Nevertheless, the Magistrate Judge cited, in addition to Plaintiff's own testimony, other circumstantial evidence from which a jury could conclude that Felts and Eshem caused additional injuries to Plaintiff in the infirmary. (Doc. 80 at 12-13). This objection is therefore overruled.

### 2. *Felts and Eshem Are Not Entitled to Qualified Immunity*

The Magistrate Judge found that Felts and Eshem were not entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim. Defendants argue this determination must be rejected because the R&R fails to describe the "clearly established" statutory or constitutional rights of which a reasonable officer would have known. (Doc. 83 at PageID# 300, citing, *inter alia*, *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).). The Court agrees with the Magistrate Judge's conclusion. If the jury were to credit Plaintiff's version of the facts, Felts and Eshem deliberately took him to the

infirmary, where there are no cameras, and "started taking turns punching [him]" until he lost consciousness. (Doc. 78-1 at 25-27.) As the Magistrate Judge stated, any reasonable government official would have understood that inflicting that kind of force without justification violated clearly established Eighth Amendment law. Thus, Defendants' objections are not well-taken.

### IV. CONCLUSION

Accordingly, for the foregoing reasons:

1. The Report and Recommendations (Doc. 80) is **ADOPTED** and Defendants' Objections (Doc. 83) are **OVERRULED**;

2. Plaintiff's motion for summary judgment (Doc. 54) is **DENIED**;

3. Defendant Warden Erdos's motion for summary judgment (Doc. 61) is **DENIED**;

4. Defendants Eshem, Felts, Fri, and McCoy's motions for summary judgment (Doc. 63) is **GRANTED in part** and **DENIED in part**; as follows:

    a. Summary judgment is **GRANTED** in favor of Defendants Fri and McCoy on all claims.

    b. Summary judgment is **GRANTED** in favor of Defendants Eshem, Felts, Fri and McCoy on any claim of excessive force prior to Plaintiff's entry into the infirmary.

    c. Summary judgment is **DENIED** on Plaintiff's Eighth Amendment claims against Defendants Felts and Eshem for the force allegedly used against Plaintiff in the infirmary.

**IT IS SO ORDERED.**

Date: 9/28/2021

s/Timothy S. Black
Timothy S. Black
United States District Judge